UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DAVID A. DIMMETT,

    Petitioner,

        v.                            CAUSE NO. 3:23-CV-663-DRL-MGG

WARDEN,

    Respondent.

## OPINION AND ORDER

David A. Dimmett, a prisoner without a lawyer, filed a habeas corpus petition under 28 U.S.C. § 2254 to challenge his convictions for dealing and possession of narcotics and other controlled substances under Case No. 82D03-1707-F2-4523. Following a jury trial, on December 19, 2018, the Vanderburgh Superior Court sentenced him as a habitual offender to 38 years of incarceration.

### FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The Indiana Court of Appeals summarized the evidence presented at trial as follows:

> On July 26, 2017, Vanderburgh County Joint Drug Task Force officers detained Dimmett outside his ex-girlfriend's residence and engaged in a consensual search of his person. The search produced two or three bags full of large quantities of drugs, including seventy-four Percocet pills, fifty-nine Adderall pills (amphetamine), nineteen tablets containing buprenorphine (Suboxone), two and a half oxycodone pills, two halves of an oxymorphone pill, one Viagra pill, an unidentified green pill, and a cell phone. Dimmett

consented to the search of his truck and residence. In his truck, officers found marijuana and a digital scale, and inside the residence they found a marijuana blunt and a pill later determined to be Trazadone.

The officers arrested Dimmett and took him to the county jail. During a recorded jailhouse call, Dimmett's father encouraged him to turn his life around and get out of the frame of mind of selling drugs. Dimmett admitted that he needed to overcome the "madness" and "sickness." A search of Dimmett's cell phone produced several text messages to various individuals referencing drugs by commonly used, first-letter abbreviations, e.g., "Ps are available" and "Just got our Ps," and a reply text stating, "Did you get some As too?" Dimmett's outgoing text messages also indicate that he changed his phone number. Detective Shelly King ran an INSPECT report to see whether Dimmett had a valid prescription on file for any of the pills recovered during the search and found that he did not.

The State charged Dimmett with level 2 felony dealing in narcotics, level 2 felony dealing in a controlled substance, level 4 felony dealing in a controlled substance, level 5 felony dealing in a controlled substance (later dismissed on the State's motion), two counts of level 6 felony narcotics possession, and class A misdemeanor marijuana possession. The State subsequently filed one count of level 3 felony narcotics possession and a habitual offender count. A bifurcated trial was scheduled. At a pretrial hearing, the trial court granted the State's motion to introduce evidence under Indiana Evidence Rule 404(b) to the effect that Dimmett had shared opiates with his friend and fellow addict Michael Tempco within a timeframe that would not be considered stale. Tempco testified at trial over Dimmett's objection.

The jury found Dimmett guilty of the two level 2 felony dealing counts, level 3 felony narcotics possession (ultimately vacated by the trial court), two counts of level 6 felony narcotics possession, class A misdemeanor possession of a controlled substance (as a lesser included offense of the level 4 felony dealing count), and class B misdemeanor marijuana possession. Before the habitual offender phase, the following exchange occurred:

> The Court: There's an Habitual Offender Enhancement alleging some prior convictions. Is that proceeding necessary?
>
> Defense Counsel: It is not, Your Honor.
>
> The Court: Okay. Mr. Dimmett you have a right to another trial essentially. You can present evidence, call witnesses to testify, cross

2

> examine anybody who testifies against you like we did during the trial on the issue of whether you have those prior convictions. Your Counsel has represented to me that you were going to admit that you have those, is that correct?
>
> The Defendant: Yes sir.
>
> The Court: Is that a free and voluntary act on your part?
>
> The Defendant: Yes sir.
>
> The Court: No one's forced you to do that and you--
>
> The Defendant: (Interrupting) No sir.
>
> The Court: Okay. All right.

> During sentencing, the trial court identified as aggravating circumstances Dimmett's criminal history and his prior dealing convictions. The court specifically found no mitigating circumstances. The court sentenced Dimmett to twenty years for his level 2 felony narcotics dealing conviction, with a fixed additional eighteen-year term for the habitual offender finding, a concurrent twenty-year term for level two felony dealing in a controlled substance, three concurrent one-year terms for the level 6 felonies and class A misdemeanor, and a concurrent 180-day term for the class B misdemeanor, for an aggregate sentence of thirty-eight years executed.

*Dimmett v. State*, 131 N.E.3d 203 (Ind. Ct. App. 2019); ECF 5-6 at 2-5.

In the petition, Mr. Dimmett asserts that he is entitled to habeas relief because trial counsel provided ineffective assistance by failing to challenge the use of ineligible felonies to support the habitual offender enhancement and by failing to challenge the offenses as charged in the criminal information. He further asserts claims of appellate counsel error and prosecutorial misconduct.

In the traverse, Mr. Dimmett also argues that he is entitled to habeas relief because the trial court did not advise him of his right a jury trial and his right against self-

incrimination when accepting his guilty plea to the habitual offender enhancement. Raising additional grounds in this manner was improper. *See* Rule 2(c)(1) of the Rules Governing Section 2254 Cases ("The petition must specify all the grounds for relief available to the petitioner."); *Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("a traverse is not the proper pleading to raise additional grounds"). Further, even if he had raised it properly, the court could not find that the state court was unreasonable in finding that Mr. Dimmett was aware of these rights given that the guilty plea occurred in the immediate aftermath of a jury trial on the underlying offenses in which the trial court advised him at the close of evidence that he had the right to testify or not. *See United States v. Henry*, 933 F.2d 553, 559 (7th Cir. 1991) ("[T]he record affirmatively must disclose that the defendant entered the plea understandingly and voluntarily. A waiver of these rights will not be presumed from a silent record, but if the defendant's intelligent awareness can be reasonably inferred from the transcript . . . , the plea passes constitutional muster.).

## PROCEDURAL DEFAULT

Before considering the merits of a habeas petition, the court must ensure that the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). To avoid procedural default, a habeas petitioner must fully and fairly present his federal claims to the state courts. *Boyko v. Parke*, 259 F.3d 781, 788 (7th Cir. 2001). Fair presentment "does not require a hypertechnical congruence between the claims made in the federal and state courts; it merely requires that the factual and legal substance remain the same." *Anderson v. Brevik*, 471 F.3d 811, 814–15 (7th Cir. 2006) (citing *Boyko*, 259 F.3d at 788). It does, however,

4

require "the petitioner to assert his federal claim through one complete round of state-court review, either on direct appeal of his conviction or in post-conviction proceedings." *Lewis*, 390 F.3d at 1025 (quotations and citations omitted). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Id.* "A habeas petitioner who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has procedurally defaulted that claim." *Id.*

Mr. Dimmett did not present any of his federal habeas claims at any level of the state courts.¹ ECF 5-3; ECF 5-7; ECF 5-12; ECF 5-16. Therefore, the claims are procedurally defaulted.

Mr. Dimmett asserts that the court should excuse procedural default because he received ineffective assistance of counsel at the post-conviction stage. A habeas petitioner can overcome a procedural default by showing both cause for failing to abide by state procedural rules and a resulting prejudice from that failure. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977); *Wrinkles v. Buss*, 537 F.3d 804, 812 (7th Cir. 2008). "Cause for a procedural default exists where something external to the petitioner, something that cannot fairly be attributed to him impeded his efforts to comply with the State's procedural rule." *Maples v. Thomas*, 565 U.S. 266, 280 (2012). As a general rule, "[n]egligence on the part of a

---

¹ In the habeas petition, Mr. Dimmett represents, under penalty of perjury, that he presented each of his claims to the Indiana Supreme Court in the petition to transfer filed just six months before he filed the habeas petition. ECF 1; ECF 5-16. Given this timeline, it seems unlikely that Mr. Dimmett was unaware that he was raising new claims in the habeas petition. Though the court declines to further consider sanctions, Mr. Dimmett is cautioned against intentionally misrepresenting facts in future filings.

5

prisoner's postconviction attorney does not qualify as cause." *Id.* The exception is that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Martinez v. Ryan*, 566 U.S. 1, 9 (2012); *Brown v. Brown*, 847 F.3d 502 (7th Cir. 2017). "[A] prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.* at 14.

An assertion of ineffective assistance of post-conviction counsel can serve to excuse the procedurally defaulted nature of claims only if they relate to the ineffective assistance of trial counsel. Consequently, the court will consider whether the ineffective assistance of trial counsel claims are substantial. However, the *Martinez* exception cannot serve to excuse the procedurally defaulted nature of his claims relating to appellate counsel error and prosecutorial misconduct. These claims are not a basis for habeas relief, so the court will not further consider them.

## LEGAL STANDARD

To prevail on an ineffective assistance of counsel claim in the state courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. "[S]trategic choices made after thorough investigation of law and facts relevant

6

to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is a probability "sufficient to undermine confidence in the outcome." *Id*. at 693. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

## ANALYSIS

A. *Habitual Offender Enhancement.*

Mr. Dimmett argues that he is entitled to habeas relief because trial counsel provided ineffective assistance by failing to challenge the use of ineligible felonies to support the habitual offender enhancement. He contends that two of the prior felonies used to support the enhancement were outside the statutory ten-year window.

The operative habitual offender enhancement statute sets forth one set of elements for individuals convicted "of murder or of a Level 1 through Level 4 felony;" a second set of elements for those convicted " of a Level 5 felony;" and third set of elements for those convicted of any felony. Ind. Code § 35-50-2-8(b)-(d) (2017). At sentencing, the trial court attached the habitual offender enhancement to his conviction on Count I, a Level 2 narcotic dealing offense. ECF 6-11 at 43-45. Consequently, the most applicable set of elements is set forth in subsection (b), which states:

7

> A person convicted of murder or of a Level 1 through Level 4 felony is a habitual offender if the state proves beyond a reasonable doubt that:
>
> > (1) the person has been convicted of two (2) prior unrelated felonies; and
> >
> > (2) at least one (1) of the prior unrelated felonies is not a Level 6 felony or a Class D felony.

Notably, though the sets of elements in subsections (c) and (d) impose certain timing-related restrictions on any lower-level felonies used to support the enhancement, subsection (b) does not.

In the amended information, the prosecution charged Mr. Dimmett as having the following prior convictions:

> On February 20, 2002, the Vanderburgh Circuit Court sentenced Mr. Dimmett in Case No. 82C01-101-CF-63 for Dealing a Schedule I Controlled Substance, a Class B Felony;
>
> On October 17, 2007, the Vanderburgh Circuit Court sentenced Mr. Dimmett in Case No. 82C01-72-FD-153 for Dealing Marijuana, a Class D felony;
>
> On March 6, 2015, the Vanderburgh Circuit Court sentenced Mr. Dimmett in Case No. 82C01-1305-FB-536 for Maintaining a Common Nuisance, a Class D felony.

ECF 6-12 at 92-93. As detailed above, there is no timing-related restriction with respect to these prior convictions, and Mr. Dimmett does not contest that these prior convictions were otherwise appropriately used to support his habitual offender enhancement. Mr. Dimmett has not shown deficient performance or prejudice. As a result, the court cannot characterize this claim as a substantial one as required to excuse procedural default under the *Martinez* exception. Because it remains procedurally defaulted, the claim that trial

8

counsel provided ineffective assistance by failing to challenge the habitual offender enhancement is not a basis for habeas relief.

B. *Felony Charges.*

Mr. Dimmett argues that he is entitled to habeas relief because trial counsel rendered ineffective assistance by failing to challenge the offenses as charged in the criminal information. He first contends that trial counsel should have objected to the charges because two of the charges involved dealing and possessing the same substance. It appears Mr. Dimmett is suggesting that trial counsel should have objected based on his right against double jeopardy. "The Double Jeopardy Clause, of course, affords a defendant three basic protections: It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Ohio v. Johnson*, 467 U.S. 493, 497–98 (1984). "There are few if any rules of criminal procedure clearer than the rule that jeopardy attaches when the jury is empaneled and sworn." *Martinez v. Illinois*, 572 U.S. 833, 839 (2014).

The record reveals that only Counts I and VII pertained to the same substance—Percocet pills—and that the trial court ultimately dismissed Count VII as a lesser-included offense at sentencing on double jeopardy grounds. ECF 6-2 at 27-28; ECF 6-11 at 43-45. It further reflects that trial counsel knew of the factual overlap between Counts I and VII because the parties discussed it at a pretrial conference in connection with the addition of Count VII to the criminal information. ECF 6-2 at 27-28. However, given the nature of double jeopardy protections, which primarily guard against the risk of multiple

9

trials and sentences, it seems unlikely that the trial court would have entertained a double jeopardy argument before completion of his first and only trial. As a result, Mr. Dimmett has not demonstrated deficient performance or prejudice with respect to his claim that trial counsel should have objected to the charges because two of the charges involved dealing and possessing the very same substance.

Mr. Dimmett next contends that trial counsel should have objected that the criminal information expressed the quantity of controlled substances in terms of weight rather than in terms of the number of pills. He asserts that pills are typically bought and sold in terms of the number of pills and that expressing the quantity in terms of weight violated his right to equal protection under the law.

"To show a violation of the Equal Protection Clause, plaintiffs must prove that the defendants' actions had a discriminatory effect and were motivated by a discriminatory purpose." *Chavez v. Illinois State Police*, 251 F.3d 612, 635–36 (7th Cir. 2001). "To prove discriminatory effect, the plaintiffs are required to show that they are members of a protected class, that they are otherwise similarly situated to members of the unprotected class, and that plaintiffs were treated differently from members of the unprotected class." *Id.* "Discriminatory purpose implies more than intent as awareness of consequences. It implies that the decisionmaker selected or reaffirmed a particular course of action at least in part because of its adverse effects upon an identifiable group." *Id.* at 645.

Mr. Dimmett's argument does not state a valid equal protection violation. He does not assert membership in a protected class; he identifies no comparator; and he does not

10

allege a discriminatory effort or purpose. Indeed, it is entirely unclear how the criminal information's expression of the quantity in terms of weight—consistent with the criminal offense statutes under which he was charged—rather than in terms of the number of pills would have had any effect on the outcome of trial. As a result, Mr. Dimmett has not demonstrated deficient performance or prejudice with respect to his claim that trial counsel should have objected to the charges because they expressed the quantity of controlled substances in terms of weight rather than in terms of the number of pills.

Third, Mr. Dimmett contends that trial counsel should have objected because the charges expressed the total weight of the pills rather than the total weight of controlled substances contained within the pills. He notes that many of the pills contained legal or decriminalized substances including acetaminophen and naloxone. Notably, each count of the criminal information contains the phrase "pure or adulterated." ECF 6-12 at 110-12, 132. Further, each criminal offense statute on which the counts are based also contains this phrase. Ind. Code § 35-48-4-1(a)(2) (2017); Ind. Code § 35-48-4-2(a)(2) (2017); Ind. Code § 35-48-4-6(a) (2017); Ind. Code § 35-48-4-11(a)(1) (2017).

As noted by the Indiana courts, "the key word here is 'adulterated.'" *Evans v. State*, 566 N.E.2d 1037, 1042 (Ind. Ct. App. 1991). "The statute clearly allows the presence of impurities or other substances to be considered in determining the weight of confiscated drugs, or in reaching the [statutory threshold weight]." *Id.* The court further observes that, following a bench conference, the trial court restricted trial counsel from arguing that only the weight of the controlled substances within the pills were legally relevant, finding that it would have invited the jury to interpret the statutory language in manner

11

contrary to the Indiana appellate courts.[2] ECF 6-1 at 24-27. Given this bench ruling, it seems unlikely that the trial court would have granted any relief based on a similar argument directed at the charges. Because the charges properly expressed the total weight of the pills, Mr. Dimmett has not demonstrated deficient performance or prejudice with respect to his claim that trial counsel should have objected because the charges expressed the total weight of the pills rather than the total weight of controlled substances contained within the pills.

Based on the foregoing, the court cannot characterize the overarching claim that trial counsel rendered ineffective assistance by failing to challenge the charged offenses as a substantial one as required to excuse procedural default under the *Martinez* exception. Because it remains procedurally defaulted, the claim that trial counsel provided ineffective assistance by failing to challenge the charged offenses is not a basis for habeas relief.

## CERTIFICATE OF APPEALABILITY

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that a reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues

---

[2] More specifically, the trial court's ruled, "I think [the prosecution] is right. It's the weight of the object. It could be .001 percent of the prohibited drug and it would still be the weight of the object that would matter because that's what adulterated means so I don't think that's an appropriate argument to make." ECF 6-1 at 26.

presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this order, there is no basis for encouraging Mr. Dimmett to proceed further.

For these reasons, the court DENIES the habeas corpus petition (ECF 1); DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED.

June 11, 2024                              *s/ Damon R. Leichty*
                                           Judge, United States District Court